Edward Mitchell, U. S. Atty., and Thomas Greenwood, Asst. U. S. Atty., opposed.

Before WALLACE and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge, (after stating the facts as above.) The application of Henry G. Marquand for leave to present the facts stated in his affidavit to the collector of customs or the board of general appraisers or other officer of the customs, and for leave to petition the collector or other proper officer to remit the duties upon the Eros, and the motion that the mandate contain the language, "without prejudice to such application, or to an application of the said Marquand for a new trial from the circuit court upon said facts," is not granted. It is not within the province of this court to grant or to withhold leave to apply to an officer of the customs for a remission of duties, or, in case a judgment of the circuit court is affirmed, to direct or suggest its action in regard to new trials upon newly-discovered evidence or newly-ascertained facts.

---

In re KNY et al.

(Circuit Court, S. D. New York. June 27, 1893.)

CUSTOMS DUTIES—CLASSIFICATION—"ABSOLUTE ALCOHOL."

So-called "absolute alcohol," manufactured in Germany, showing 198 degrees of proof, being equivalent to 99.5 per cent. of anhydrous alcohol, imported on the orders and for the laboratory use of certain colleges, and sold by the importers at an advance on the cost price of about 20 per cent., *held* duty free as a scientific preparation imported in good faith for the use of institutions incorporated for educational and scientific purposes. not intended for sale under paragraph 677 of the free list of the tariff act of October 1, 1890, and not duitable- as alcohol at $2.50 per proof gallon, under paragraphs 329 and 333 of Schedule H of the tariff act of October 1, 1890.

At Law.

Appeal by the collector of the port of New York from a decision of the board of United States general appraisers, concerning the classification for customs duties of certain so-called "absolute alcohol," which was classified for duty by the said collector as "alcohol, 198 degrees, $4.95," at $2.50 per proof gallon, under the provisions of paragraphs 329 and 333 of Schedule H of the tariff act of October 1, 1890, which provisions are as follows: "329. Brandy and other spirits manufactured or distilled from grain or other materials, and not specially provided for in this act, two dollars and fifty cents per proof gallon." "333. No lower rate or amount of duty shall be levied, collected, and paid on brandy, spirits, and other spirituous beverages than that fixed by law for the description of first proof; but it shall be increased in proportion for any greater strength than the strength of first proof, and all imitations of brandy or spirits or wines imported by any names whatever shall be subject to the highest rate of duty provided for the genuine articles respectively intended to be represented, and in no case less than one dollar and fifty cents per gallon." Against this classification the importers protested, claiming that the article was a scientific preparation for college use, and duty free, under paragraph 677 of the free list of said tariff act, which is as follows: "677. Philosophical and scientific apparatus, instruments, and preparations; statuary, casts of marble, bronze, alabaster,

or plaster of Paris; paintings, drawings, and etchings, specially imported in good faith for the use of any society or institution incorporated or established for religious, philosophical, educational, scientific, or literary purposes, or for encouragement of the fine arts, and not intended for sale." The importers procured the matter to be certified to the board of United States general appraisers pursuant to section 14 of the so-called "Customs Administrative Act," of June 10, 1890, and that board proceeded to take certain testimony in relation thereto, from which it appeared that this "absolute alcohol" was made by chemical action by adding lime, and then distilling the liquid over again, by means of which the high percentage of 99.5 of alcohol was obtained; and that it was from two to three times higher in price than the regular alcohol of commerce, running only to 95 per cent. Proof was also offered that this absolute alcohol was imported on the orders and for the use of certain colleges in the United States, and that the importers did not keep the article in stock, nor any other chemicals, and that it was solely to be used for scientific purposes.

The board of general appraisers thereupon rendered a decision, the opinion written by Somerville, general appraiser, in which it was held, referring to the absolute alcohol in question, and citing from the United States dispensatory: "'In this state it cannot be obtained by ordinary distillation alone, the purest alcohol thus procured still containing 11 per cent. of water. To separate this, it is customary to have recourse to substances having a very strong affinity for water, sufficient not only to abstract it from the alcohol, but to retain it at a temperature at which alcohol will distill over.' The mode of preparing the article is an elaborate chemical process, which is given in the work above cited, and also by expert witnesses examined before the board in the hearing. * * * We make the following findings of fact: (1) The merchandise is 'absolute alcohol,' which is an article of commerce entirely distinct in nomenclature, chemical composition, and uses from alcohol proper, and was imported since October 6, 1890. (2) It contains from 98 to 99 per cent. of pure alcohol, and is used chiefly in the laboratory, either for analytical purposes or for illustrating or teaching scientific principles. It is worth twice as much as common alcohol, and is never, therefore, used for mere industrial purposes. (3) It is a preparation of alcohol, made by removing, by an elaborate chemical process, 7 or 8 per cent. of water, and can be preserved pure only by keeping it in vessels hermetically sealed. (4) The merchandise was imported by the protestants specially, in good faith, for the use of colleges established for educational, scientific, or literary purposes, and for no other purpose, the importers being paid for their services by making an extra charge over prime cost for the merchandise. The importation in case * * * 16654A, for Cornell University, in New York, Wesleyan University, at Middletown, Conn., and Maine State College, in the state of Maine. It follows from the last finding that the goods are 'not intended for sale,' within the meaning of said paragraph 677, by which we understand not intended to be disposed of by sale to any other person than the corporation or society for whose special use the importation is permitted to be made. The protests are sustained, and the decision in each case reversed, with instructions to reliquidate the entries accordingly."

General Appraiser Tichenor dissented from the conclusion reached by the majority of the board for the following reasons: "(1) Alcohol, whether known as 'absolute alcohol' or otherwise, being specially provided for as distilled spirits at a fixed rate of duty per proof gallon in Schedule H of the present tariff act, cannot, in my opinion, be held to be exempt from duty under a general and indefinite provision elsewhere in said act. (2) Alcohol absolute, or pure alcohol, is not, according to my understanding, a philosophical or 'scientific preparation,' within the intent and meaning of paragraph 677 of the existing tariff, but is, in fact, an industrial product of variable character and value, as is shown by the wide difference in the invoice price of the several importations subject of these protests, some of which are at marks 2.30 per kilo, and others at marks 1.85 per kilo. (3) As appears from the papers and testimony in these cases, the alcohol in question was imported by firms engaged in the importation and sale of merchandise of this class; and,

while this was imported by them on the order of the several institutions mentioned, it was sold by them to said institutions at an advance over cost, or at a profit of about 20 per cent. I am therefore of the opinion that the merchandise is dutiable as assessed by the collector." The collector thereupon appealed the case to the United States circuit court, under section 15 of the above-cited customs administrative act of June 10, 1890, and further evidence was taken in the circuit court, from which it appeared that absolute alcohol, running as high in percentage of anhydrous alcohol as the imported article in question, was manufactured to a considerable extent in this country from the ordinary alcohol of commerce by a process of treatment with chloride of calcium, which, having a great affinity for water, absorbed the water from the alcohol, which was slowly distilled over by repeated distillations until the alcohol reached the desired strength; that the absolute alcohol was a regular article of commerce in the markets of this country, and was used considerably for "cutting oils" to make essences, by confectioners and manufacturers; that it was also sold to some extent to wholesale druggists and pharmaceutical chemists. It appeared also to have been used at one time in combination with camphene in producing an illuminating fluid. There was testimony, however, that absolute alcohol of the kind imported, being of a very superior character, was used chiefly, if not entirely, for chemical and laboratory purposes, and by the large universities in the country, and always sold in bottles, to prevent deterioration or absorption of moisture from the atmosphere. Evidence was also produced showing that the proper oaths taken by officers of the colleges for which the importation was made were duly presented to the collector of the port on the entry of the merchandise, which was entered free, and the duty subsequently assessed thereon by the collector. It was admitted that the importers' profit in furnishing the article to the colleges in question was about 20 per cent.

Edward Mitchell, U. S. Atty., and James T. Van Rensselaer, Asst. U. S. Atty., for the collector and the United States.

Comstock & Brown, for the importers.

LACOMBE, Circuit Judge, (orally, after hearing argument.) "I affirm the decision of the board of general appraisers in this case."

---

In re HAAGER et al.

(Circuit Court, S. D. New York. June 22, 1893.)

CUSTOMS DUTIES—TARIFF ACT OF OCTOBER 1, 1890—DOTTED SWISSES AND FIGURED SWISSES, OR SWISS SPOTS AND SWISS SPRIGS.

Cloths composed of cotton, bleached, ornamented with dots, spots, sprigs, or other figures of cotton that were made in the cloth, in a loom, simultaneously with the manufacture of the cloth, by means of bobbins which operated such times, while the shuttle was weaving the cloth, as the pattern required the production of such figures, and commonly known as "Dotted Swisses" and "Figured Swisses," or "Swiss Spots" and "Swiss Sprigs," are not dutiable at the rate of 60 per cent. ad valorem, as embroideries or as articles embroidered, under the provision for embroideries or articles embroidered contained in paragraph 373 (Schedule J) of the tariff act of October 1, 1890, (26 Stat. 594,) nor, though containing exceeding 100 threads, and not exceeding 150 threads, to the square inch, counting the warp and filling, and valued at over 10 cents per square yard, are they dutiable at the rate of 40 per cent. ad valorem, as cotton cloths, bleached, containing such number of threads so counting, and valued at so much per square yard, under the provision for such cotton cloths contained in paragraph 346 (Schedule I) of the same tariff act, (26 Stat. 591,) but are dutiable at the rate of 40 per cent. ad valorem as manufactures of